RECEIVED
MAR 07 2000

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ARMAND A. ACCIARI, JR.,

Plaintiff,

v.

BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY, a Delaware Corporation,

Defendant.

**STIPULATION TO AMEND COMPLAINT**

Judge James M. Rosenbaum
Magistrate Judge Franklin L. Noel

Case No. 00-CV-18 JMR/FLN

IT IS HEREBY SITPULATED AND AGREED, by and among the parties through their undersigned respective counsel:

1. The Complaint of Plaintiff Armand A. Acciari, Jr. herein may be amended as set forth in the attached First Amended Complaint.

Dated: 3/1/00

SPENCE, RICKE & THURMER

By____________________
Rodney A. Honkanen, #46929
Attorneys for Defendant
325 Cedar Street, Suite 600
St. Paul, MN 55101
(651) 223-8000

FILED________
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

Dated:

LAW OFFICE OF WAYNE RICE

By ______________________________

Wayne J. Rice (227110)
1769 Lexington Avenue North
PMB 331
Roseville, MN 55113
(651) 917-9056

f:\shared_docs\acciari\pldg\stip.doc \kl

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ARMAND A. ACCIARI, JR.,

Plaintiff,

vs.

BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY, a Delaware Corporation.,

Defendant.

**FIRST AMENDED COMPLAINT**

**Jury Trial Demanded**

Judge James M. Rosenbaum
Magistrate Judge Franklin L. Noel

Case No. 00-CV-18 JMR/FLN

Armand A. Acciari, Jr., ("Plaintiff") for his Complaint against the Burlington Northern and Santa Fe Railway Company ("Defendant"), states and alleges as follows:

**NATURE OF THE CASE**

Plaintiff brings this case of: disability discrimination and failure of accommodation under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 et seq. ("ADA") and the Minnesota Human Rights Act, as amended, Minn. Stat. § 363.01 et seq.; ("MHRA"), and age discrimination under the Age Discrimination in Employment Act 0f 1967, as amended , 29 U.S.C. §§ 621 et seq. ("ADEA") and the MHRA.

**JURISDICTION**

This case was removed by Defendant on January 4, 2000, pursuant to 28 U.S.C. § 1441. This Court has jurisdiction by virtue of the federal question at issue under 28 U.S.C. § 1331, and on the basis of diversity jurisdiction under 28 U.S.C. § 1332.

**PARTIES**

1. Plaintiff is a 65-year old man and resident of Ramsey County who was, between 1953 and 1975, employed by the Northern Pacific Railway Company, then Burlington

Northern, Inc., both predecessors to defendant the Burlington Northern and Santa Fe Railway Company, in the Car Shop at its Northtown location in St. Paul, Minnesota.

2. Defendant Burlington Northern and Santa Fe Railway Company ("Defendant" or "BNSF") is a Delaware corporation with its principal place of business in Texas. BNSF operates one of the largest railroad networks in North America with over 34,000 track miles and more than 44,000 employees.

**FACTUAL STATEMENT**

3. Plaintiff began working for Northern Pacific Railway Company ("Northern") in June 1953.

4. Northern subsequently merged with another railroad company and became Burlington Northern, Inc. ("BN").

5. Plaintiff left BN's employ in February 1975 in the position of Carmen Helper.

6. At the time of Plaintiff's departure, he was performing cleaning tasks and other janitorial duties.

7. On February 19, 1975, Plaintiff was directed by his supervisor to apply for disability leave due to a hearing impairment.

8. In a letter dated March 6, 1975, BN's Chief Medical Officer, Dr. Abbott Skinner, M.D., stated in writing that it was the opinion of BN's medical department that Plaintiff "should be retired because of almost total loss of hearing in one ear and marked impairment in the other."

9. Plaintiff requested to return to work with BN in 1982.

10. Upon information and belief, in connection with his request to return to BN, Plaintiff underwent a physical medical examination performed by a BN physician in which it was determined that he was not to work in any position where communication was critical to safety or job performance.

11. Upon information and belief, in 1982, BN subsequently denied Plaintiff's request to return to his job as Carmen Helper, but did not seek to find a reasonable accommodation for his disability, or to reassign him to another position within which he could work given his limitations.

12. In a letter dated July 15, 1995, from Plaintiff to Dr. Thomas V. Mears, M.D., Vice President of Occupational and Environmental Health and Wellness for BN, Plaintiff stated that he wanted to return to work, and that according to his doctor he was able to perform any kind of work, so long as he wore ear protection in noisy areas.

13. In a letter dated August 31, 1995, from Dr. Mears to Rick E. Olson, General Foreman Cars- Northtown for BN, Dr. Mears wrote: "Mr. Acciari wrote me requesting consideration for return to work and accommodation. . . . Please advise me and Mr. Acciari if there is any position that he could hold that would meet [his] restrictions."

14. In a memo dated September 13, 1995, from Mr. Olson to Dr. Mears, Mr. Olson wrote: "[T]here are no positions available that would allow [Plaintiff] to return to work at this Car Shop facility due to his present medical restrictions.

15. Upon information and belief, no other inquiry was made by Defendant to determine whether a position existed outside of the Northtown Car Shop that Plaintiff could perform, with or without reasonable accommodation.

16. Upon information and belief, Defendant made no effort to restructure an existing position so that Plaintiff could perform the essential functions of that position within his restrictions.

17. In early 1999, Plaintiff again began contacting BNSF in the hope of obtaining either his former position as a Carmen Helper or a another position for which he was qualified.

18. On or about March 8, 1999, Plaintiff meant with BNSF foreman Oscar Claspill at the Northtown Car Shop to discuss reemployment with Defendant.

19. During that meeting, Mr. Claspill stated that Plaintiff was too old, could not hear and that he should take his files and go home.

20. The following day, March 9, 1999, Plaintiff met with John Shook, Director of Human Resources for BNSF who stated BNSF did not normally hire persons who are 65 years old, intimating that Plaintiff was too old to work for BNSF.

21. On or about March 15, 1999, Plaintiff underwent a hearing evaluation, which revealed hearing loss in both ears which was moderate in the low frequency range, severe in the low to mid-frequency range and profound in the high-frequency range.

22. The recommendation of the person who performed the evaluation was that Plaintiff should wear ear protection when exposed to loud noise for any period of time.

23. In a letter dated April 7, 1999, from Dr. Michael Jarrard, MD, MPH, Medical Officer for BNSF to Oscar Claspill, Dr. Jarrard stated that Plaintiff "may not work in any area where normal hearing is required for safety or for job performance; i.e., where inability to hear normal conversation or moving equipment would endanger himself or others or interfere with his ability to do essential job functions." Dr. Jarrard continued the letter by stating: "Please

advise Mr. Acciari and me if there is any position he has the seniority to hold that allows him to perform the essential job functions safely with the above restrictions."

24. In a letter dated April 9, 1999, from John Shook to Plaintiff, Mr. Shook states: "Given your restrictions it is the Company's assessment that any position you might possibly hold within the Car Shop would endanger yourself and others."

25. At no time did Defendant ever undertake an analysis of the essential functions of Plaintiff's position to determine if normal hearing was necessary to perform those functions.

26. At no time did Defendant ever discuss with Plaintiff the availability of any employment with BNSF in a position other than Carmen Helper or in a location outside of the Northtown Car Shop.

27. At no time did Defendant attempt to restructure the Carmen Helper position to allow Plaintiff to perform the essential functions of that position within his restrictions.

28. At no time did Defendant attempt to reassign Plaintiff to a position to which he was entitled by virtue of his seniority or a vacant position.

29. Upon information and belief, Defendant employs persons who perform janitorial work who are not exposed to the train and other heavy equipment traffic to which a Carmen Helper is exposed.

30. Plaintiff worked inside the Northtown Car Shop for several months in 1998 and 1999 as the employee of an independent contractor hired by BNSF.

31. Plaintiff continues to work on BNSF property at the Northtown location (but not in the Car Shop) performing janitorial work for an independent contractor hired by BNSF.

32. Upon information and belief, BNSF has positions either available, or to which Plaintiff is entitled by virtue of his seniority, for which Plaintiff is qualified, with or without a reasonable accommodation.

**COUNT I**

**(Age Discrimination under the Age Discrimination in Employment Act)**

Plaintiff realleges the above allegations as if hereinafter set forth in full and further states and alleges as follows:

33. Plaintiff is over the age of 40 and thus is protected by the Age Discrimination in Employment Act of 1967 (the "ADEA").

34. Plaintiff is qualified to perform the essential functions of a position with Defendant.

35. One of Defendant's employees who would be Plaintiff's supervisor if Plaintiff were rehired as a Carmen Helper made derogatory comments about Plaintiff's age, stating that he was too old to work for Defendant.

36. Another employee, a Director of Human Resources stated that Defendant did not hire persons who are 65 years old, demonstrating an anti-age animus in violation of the ADA.

37. Defendant failed to hire Plaintiff for a position for which he was qualified because of his age.

38. By reason of the foregoing, Plaintiff has suffered damages, including, but not limited to, the loss of income, emotional distress and mental anguish and suffering and other harm in a reasonable amount in excess of $75,000.

39. By reason of the foregoing, Plaintiff is entitled to a judgment against Defendant in a reasonable amount in excess of $75,000, and his reasonable attorney's fees and costs incurred herein.

**COUNT II**

**(Age Discrimination under the Minnesota Human Rights Act)**

Plaintiff realleges the above allegations as if hereinafter set forth in full and further states and alleges as follows:

40. Plaintiff is protected by Minn. Stat. § 363.01 et seq., known as the Minnesota Human Rights Act (the "MHRA").

41. Defendant, an employer within the meaning Minn. Stat. § 363.01, Subd. 17, committed an unfair employment practice in violation of Minn. Stat. § 363.03, Subd. 1(2)(c) by failing to rehire Plaintiff because of his age.

42. Plaintiff was qualified to perform the essential functions of a position with Defendant and one Defendant's managers stated directly that Plaintiff was "too old" and that he should "go home."

43. The statement by a Director of Human Resources that Defendant does not usually hire persons who are 65 years old is a statement that demonstrates anti-age animus of BNSF in violation of Minn. Stat. § 363.03.

44. By reason of the foregoing, Plaintiff has suffered damages, including, but not limited to, the loss of income, emotional distress and mental anguish and suffering and other harm in a reasonable amount in excess of $75,000.

45. The above-referenced damages should be trebled, pursuant to Minn. Stat § 363.071, Subd. 2.

46. By reason of the foregoing, Plaintiff is entitled to judgment against Defendant in a reasonable amount in excess of $75,000, which amount should be trebled, together with a civil penalty payable to the State, in addition to Plaintiff's reasonable attorney's fees and costs incurred herein.

**COUNT III**

**(Disability Discrimination under the Americans with Disabilities Act)**

Plaintiff realleges the above allegations as if hereinafter set forth in full and further states and alleges as follows:

47. Plaintiff is disabled as defined in the Americans with Disabilities Act of 1990 (the "ADA"). Defendant violated Title I of the ADA by discriminating against Plaintiff on the basis of his disability and by failing to provide appropriate accommodation for his disability.

48. Plaintiff's 22-year history with Defendant in the position of Carmen Helper indicates that he is qualified to perform the duties of that position without a reasonable probability of substantial harm to himself or others.

49. Plaintiff's work history with Defendant, as well as his work history outside of Defendant's employ, indicated that he is qualified to perform the essential functions of janitorial work. If necessary, Defendant could have provided Plaintiff with a reasonable accommodation. Defendant refused to provide Plaintiff with a reasonable accommodation.

50. Plaintiff is entitled to displace less senior employees currently employed by Defendant in the Carmen Helper position by virtue of his seniority under the collective bargaining agreement in effect that controls the terms and conditions of his employment with Defendant.

51. Plaintiff is also entitled to displace employees and/or subcontractors who work as janitors for Defendant by virtue of the collective bargaining agreement with Defendant.

52. Plaintiff tried on many different occasions to obtain work with BNSF, but was told in no uncertain terms that his hearing impairment did not permit him to hold any job with Defendant.

53. Defendant violated the ADA when after Plaintiff attempted to return to his position, Defendant failed to properly assess the essential functions of the Carmen Helper position to determine whether Plaintiff could perform these functions with or without reasonable accommodation.

54. Defendant violated the ADA when after Plaintiff suggested the reasonable accommodation of job restructuring and job reassignment, Defendant refused to enter into an interactive process to determine whether there was any reasonable accommodation that could be made to allow Plaintiff to perform the duties of a Carmen Helper, or to find another position with Defendant for which he was qualified, with or without a reasonable accommodation.

55. An employer has a duty to gather sufficient information from applicants and from qualified experts to determine what, if any, accommodations are necessary to allow the applicant to perform the job safely. Defendant intentionally discriminated against Plaintiff on the basis of his disability when it presumed that Plaintiff would be a safety hazard to himself and others without making the assessment required to determine the duration of the risk, the nature

and severity of the potential harm, the likelihood that the potential harm would occur and the imminence of the potential harm that would occur if Plaintiff worked in his former position as a Carmen Helper.

56. Defendant violated the ADA when it failed to hire Plaintiff as a Carmen Helper or place him in another position for which he was qualified because of his disability.

57. By reason of the foregoing, Plaintiff has suffered damages, including, but not limited to, the loss of income, emotional distress and mental anguish and suffering and other harm in a reasonable amount in excess of $75,000.

58. By reason of the foregoing, Plaintiff is entitled to judgment against Defendant in a reasonable amount in excess of $75,000, and his reasonable attorney's fees and costs incurred herein.

**COUNT IV**

**(Disability Discrimination under the Minnesota Human Rights Act)**

Plaintiff realleges the above allegations as if hereinafter set forth in full and further states and alleges as follows:

59. Plaintiff is qualified to perform the Carmen Helper position and janitorial work for Defendant.

60. Plaintiff is disabled within the meaning of Minn. Stat. § 363.01, Subd. 13.

61. Plaintiff was denied employment with Defendant because of his disability.

62. Defendant presumed that Plaintiff would pose a danger to himself and others in the workplace if he were allowed to work as a Carmen's Helper.

63. Defendant engaged in an unfair employment practice in violation of Minn. Stat. § 363.03 Subd. 1(2)(c) when it did not undertake the required investigation to make this determination.

64. Defendant engaged in an unfair employment practice in violation of Minn. Stat. § 363.03 Subd. 1(2)(c) because it refused to make a reasonable accommodation to allow Plaintiff to perform work for Defendant. Defendant failed to make any attempt to find a reasonable accommodation to allow Plaintiff to remain employed or to be rehired.

65. By reason of the foregoing, Plaintiff has suffered damages, including, but not limited to, the loss of income, emotional distress and mental anguish and suffering and other harm in a reasonable amount in excess of $75,000.

66. The above-referenced damages should be trebled, pursuant to Minn. Stat. § 363.071, Subd. 2.

67. By reason of the foregoing, Plaintiff is entitled to judgment against Defendant in a reasonable amount in excess of $75,000, which amount should be trebled, together with a civil penalty payable to the State, in addition to Plaintiff's reasonable attorney's fees and costs incurred herein.

**COUNT V**
**(INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)**

Plaintiff realleges the above allegations as if hereinafter set forth in full and further states and alleges as follows:

68. Defendant, through its management employees, conducted themselves in a manner towards Plaintiff that was so extreme and outrageous as to be beyond all bounds of common social decency.

69. It was reasonably foreseeable that this conduct would result in the infliction of mental and emotional distress upon Plaintiff.

70. By reason of the foregoing, Plaintiff has suffered damages, including, but not limited to emotional distress and mental anguish and suffering and other harm in a reasonable amount in excess of $75,000.

71. By reason of the foregoing, Plaintiff is entitled to judgment against Defendant in a reasonable amount in excess of $75,000.

**WHEREFORE,** Plaintiff Armand A. Acciari, Jr., requests judgment against Defendant Burlington Northern Santa Fe Railway Company as follows:

1. Judgment in a reasonable amount in excess of $75,000.

2. The trebling of damages for unfair employment practices engaged in by Defendant pursuant to Minn. Stat. § 363.071, Subd. 2.

3. The imposition of a civil penalty against Defendant for the aforesaid unfair employment practice committed by Defendant, pursuant to Minn. Stat. § 363.071, Subd. 2.

4. Interest on the aforesaid amounts.

5. The award to Plaintiff of his reasonable attorney's fees and costs incurred herein.

6. Such other equitable and legal relief as may be deemed just and reasonable.

**Plaintiff hereby demands a trial by jury on all issues so triable.**

Dated: February 10, 2000

**THE LAW OFFICE OF**
**WAYNE J. RICE, P.A.**

By: Wayne J. Rice
Attorney Reg. No. 227110
1760 Lexington Ave. N., PMB 331
Roseville, MN 55113
(651) 917-9505

**ATTORNEY FOR PLAINTIFF**
**ARMAND A. ACCIARI, JR.**